IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**QUENTIN JEREL PERKINS,**<br><br>*Defendant.* | **CRIMINAL ACTION NO.**<br>**5:22-cr-00045-TES-CHW-1** |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

Relying on the Constitutional protection against unreasonable searches and seizures, Defendant Quentin Jerel Perkins moves to suppress evidence that was seized because of a traffic stop conducted by Drug Enforcement Administration (DEA) agents and Warner Robins Police Department (WRPD) investigators on January 28, 2022, in Warner Robins, Georgia. [Doc. 29]. The Government filed a Response to Defendant's Motion to Suppress. [Doc. 32].

After consideration of the parties' arguments and with the benefit of oral argument, the Court **DENIES** Defendant's Motion to Suppress [Doc. 29].

**FACTUAL BACKGROUND**

On January 28, 2022, at around 12:00 p.m., DEA agents and WRPD Narcotics Unit investigators were preparing to execute a federal search warrant on Room 211 of the Quality Inn and Suites at 215 Margie Drive, Warner Robins, GA, in connection with an investigation into Norman Perkins, who is Defendant's brother.[1] [Doc. 29, p. 1]; [Doc. 32, p. 1].

---

[1] A portion of the facts discussed in this Order come from the testimony of Narcotics Investigator Brandon Underwood with the Warner Robins Police Department, as well as from Investigator Harvey's

Around 12:05 p.m., surveilling agents observed Defendant and a female exit Room 211, both carrying backpacks. [Doc. 29, p. 2]; [Doc. 32, p. 2]. Defendant was carrying a bright yellow backpack. [Doc. 32, p. 2]. The two individuals entered a white Toyota Prius (Tag No. RXV7151) and then drove away from the hotel. [Doc. 29, p. 2]; [Doc. 32, p. 2]. Officers checked the Prius's registration, which came back under the name of Shaleena Bell. [Doc. 29, p. 2]; [Doc. 32, p. 2].

WRPD officers conducted a traffic stop on the Prius for a suspected window tint violation. [Doc. 29, p. 2]; [Doc. 32, p. 2]. The stop occurred at around 12:20 p.m., about 15 minutes after the Prius left the hotel. [Doc. 29, p. 2]; [Doc. 32, p. 2]. As the officers approached the vehicle, they "observed a strong odor of marijuana radiating from the vehicle." [Doc. 29, p. 2]; [Doc. 29-1, p. 2]; [Doc. 32, p. 2]. The driver of the Prius was identified as Shaleena Bell, and the front seat passenger was Defendant. [Doc. 29, p. 2]; [Doc. 32, p. 2].

Because of the smell of marijuana coming from the Prius, agents conducted a probable cause search of the vehicle. [Doc. 29, p. 2]; [Doc. 32, p. 2]. In the front seat passenger area where Defendant was sitting, there was a bright yellow backpack—the same one he had been seen carrying out of the hotel room. [Doc. 29, pp. 2–3]; [Doc. 32, p. 2]. Inside the backpack, the agents found a Glock Model 17, 9x19mm caliber handgun, a 30-round extended magazine, 27 rounds of 9mm ammunition, two additional magazines, marijuana packaging materials, suspected fraudulent checks, and mail in Defendant's name. [Doc. 29, p. 3]; [Doc. 32, p. 2]. The Glock was fitted with a selector switch. [Doc. 32, p. 2]. A selector switch is a device that allows a

---

body camera recording that the Government submitted as an exhibit during Defendant's suppression hearing on January 19, 2023. The Court finds that these facts are established by a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974); *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

conventional semi-automatic Glock pistol to function as a fully automatic firearm. [*Id.*]. Selector switches are illegal, therefore Defendant was arrested and transported to the WRPD for investigative detention. [Doc. 29, p. 3]; [Doc. 32, p. 2]. Law enforcement officers did not find marijuana in the vehicle and did not issue a window-tint citation to Ms. Bell, who was released. [Doc. 29, p. 3].

Defendant was later indicted by a grand jury on two charges. [Doc. 1]; [Doc. 2]. First, the Defendant was indicted for the possession of an unregistered firearm (specifically possessing a device designed and intended for use in converting a weapon into a machinegun as defined in Title 26, United States Code, Section 5845(b) which was not registered to him in the National Firearms Registration and Transfer Record) in violation of Title 26, United States Code, Sections 5841, 5861(d), and 5871. [Doc. 1, p. 1]. Second, the Defendant was indicted for the possession of a firearm without a serial number (specifically possessing a device designed and intended for use in converting a weapon into a machinegun as defined in Title 26, United States Code, Section 5845(b), not identified by a serial number as required by chapter 53 of Title 26) all in violation of Title 26, United States Code, Sections 5861(i) and 5871. [*Id.* at pp. 1–2].

## MOTION TO SUPPRESS

### A. Legal Standard

The movant bears the initial burden of persuading the court, through specific factual allegations and supporting evidence, that the evidence should be suppressed. *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977).[2] Once the movant establishes a basis for the motion,

---

[2] Because the Eleventh Circuit was previously a part of the Fifth Circuit, cases decided by the Fifth Circuit prior to October 1, 1981, are precedential to this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

the burden then shifts to the Government to prove by a preponderance of the evidence that the search or seizure of evidence was legally and factually justified. *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983) (citation omitted) ("Upon a motion to suppress evidence garnered through a warrantless search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution. The Government must demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the [F]ourth [A]mendment."); *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) (citation omitted) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").

### B.    Defendant's Motion to Suppress

Although Defendant argued in his Motion that the traffic stop itself was unreasonable, he conceded at his Motion hearing that the traffic stop was legal.[3] Therefore, Defendant's one remaining argument is that the law enforcement officers lacked probable cause to search the Prius and Defendant's backpack. Specifically, Defendant argues that because he was only a passenger in the vehicle and was not seen using or possessing marijuana, and because law enforcement officers seemingly said nothing about smelling marijuana before searching the vehicle, his backpack should not have been searched. [Doc. 29, pp. 4–5]. Defendant's arguments fail.

The Fourth Amendment protects people from unreasonable searches and seizures. U.S.

---

[3] As noted above, law enforcement officers stopped the Prius based on a reasonable suspicion that the Prius's window tint violated Georgia law. *See* O.C.G.A. § 40-8-73.1. Reasonable suspicion is defined as "specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant [an] intrusion." *United States v. Cooper*, 873 F.2d 269, 274 (11th Cir. 1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). The Court agrees that the stop was indeed legal.

4

CONST. amend. IV. Law enforcement's "decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). The darkly tinted windows provided the police with probable cause that a traffic violation had occurred. Therefore, the traffic stop was justified. *See Whren*, 517 U.S. 806. Whether officers had underlying motives for the traffic stop—such as an interest in Defendant as a potential drug trafficking co-conspirator—has no bearing on the Fourth Amendment analysis. *Whren* made very clear that where probable cause to conduct a traffic stop is present, the fact that the officers have some ulterior motive for the stop is simply irrelevant to the analysis. 517 U.S. at 811–12; *United States v. Holloman*, 113 F.3d 192, 194 (11th Cir. 1997) (noting that *Whren* "squarely rejected the pretextual stop analysis that had prevailed previously in the Eleventh Circuit" and "conclusively refute[d] the notion that ulterior motives may invalidate police conduct that is justified on the basis of probable cause to believe that a violation of law has occurred").

Defendant argues that the Government's asserted reason for searching the car and his backpack—namely, the odor of marijuana—is pretextual and was seemingly made up after the fact. In fact, the body-camera recording played at the Motion hearing showed law enforcement officers knocking on the window of the Prius, asking Defendant to get out, informing him that he was part of a drug investigation, then quickly searching the vehicle and Defendant's backpack. And as Investigator Brandon Underwood testified and the video showed, none of the law enforcement officers ever told either the Defendant or the driver that they smelled marijuana. Despite all of this, the smell of marijuana still provided law enforcement officers with probable cause to search the vehicle and backpack. And as Investigator Underwood noted,

5

it is common for law enforcement officers to smell marijuana while not verbalizing that fact during a traffic stop like this.

The touchstone of the Fourth Amendment is reasonableness. *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003). WRPD officers had reasonable suspicion to stop the Prius for a suspected window tint violation under O.C.G.A. § 40-8-73.1. Additionally, the odor of marijuana radiating from the vehicle provided the officers with probable cause to search the Prius. Under the "automobile exception" to the Fourth Amendment's warrant requirement, police officers may conduct a warrantless search of a car if the car is operational and if the police have probable cause for the search. *United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007). Probable cause "exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." *Id.* When an officer detects the odor of marijuana emanating from a vehicle, probable cause exists to support a warrantless search of the vehicle. *United States v. Reed*, No. 21-10257, 2021 WL 5629980, at *2 (11th Cir. 2021); *United States v. Johns*, 469 U.S. 478, 482 (1985) ("After the officers came closer and detected the distinct odor of marihuana, they had probable cause to believe that the vehicles contained contraband."); *Merricks v. Adkisson*, 785 F.3d 553, 560 n.3 (11th Cir. 2015) (noting that "the smell of burnt marijuana emanating from a vehicle is sufficient probable cause to search a vehicle").

The Court acknowledges that the Government would certainly have a more convincing argument that probable cause existed had the law enforcement officers noted on the scene that they were searching the vehicle because they smelled marijuana. However, based on the totality of the circumstances, the fact the law enforcement officers did not explain to Defendant that

6

they smelled marijuana before searching the car does not invalidate the fact that they still had probable cause to search.

Put simply, Investigator Underwood testified as to what he saw and smelled, and Defendant gives the Court no reason to disbelieve this testimony.[4] Moreover, given Investigator Underwood's years of experience as a law enforcement officer, his training, and the Court's assessment of his personal credibility during his testimony, the Court finds him to be a credible witness. *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) ("Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses."). Therefore, based on the record developed by the parties, the Court finds that the law enforcement officers who conducted the traffic stop had probable cause based on the odor of marijuana alone to search the vehicle and Defendant's backpack; thus, the search of Defendant's backpack was reasonable and therefore legal.

## CONCLUSION

Accordingly, the Court **DENIES** Defendant's Motion to Suppress [Doc. 29].

**SO ORDERED**, this 19th day of January, 2023.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[4] The Court specifically notes that Defendant did not call the driver to contest Investigator Underwood's testimony about the odor of marijuana and Defendant chose not to testify.